# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITYLIGHTS DISTRIBUTION, LLC,<br><br>                    Plaintiff,<br><br>     v.<br><br>FANX, INC. d/b/a GAMEDAY VR,<br><br>                    Defendant. | Case No.: 1:23-cv-8397<br><br>**COMPLAINT** |

Plaintiff CityLights Distribution, LLC ("CityLights"), by and through its undersigned counsel, Kravit Smith LLP, states for its Complaint against FanX, LLC d/b/a Gameday VR ("Gameday"), as follows:

## INTRODUCTION

1.  Plaintiff CityLights creates virtual and augmented reality cinematic content that is enhanced by offering that content on haptic chairs that enriches the cinematic experience. Defendant Gameday is engaged in the business of operating location-based virtual reality entertainment venues.

2.  CityLights and Gameday entered into an Equipment Placement and Content Agreement dated as of June 27, 2021 which was later amended and restated in an Equipment Financing, Equipment Placement, Content Development, and Licensing Agreement dated as of June 10, 2022 (the "Agreement") with the object being Gameday's operation of 18 of CityLights' haptic chairs and content at a Gameday's VR venue at Fisherman's Wharf in the San Francisco Bay area (the "Gameday Venue"). The Agreement provided special exclusivity and other rights to CityLights and provided CityLights the rights of first refusal to finance and

1

participate in additional content and hardware at the Gameday Venue.

3. Shortly after the Agreement was executed, Gameday breached the Agreement by (a) failing to provide CityLights periodic disclosure of the performance metrics at the Gameday Venue; (b) failing to pay CityLights the revenues to which it was due under the Agreement; (c) refusing to honor CityLights' right of first refusal to finance and participate in new equipment and content; (d) failing to collaborate on business decisions affecting CityLights, including the Gameday's unilateral decision to completely remove CityLights's chairs from Gameday's venues.

4. By this action, CityLights seeks a judgment for damages it has suffered as a consequence of Gameday's breach of the Agreement.

## THE PARTIES

5. Plaintiff CityLights is a Delaware limited liability company with headquarters c/o Select Family Office, located at 757 Third Avenue, 20th Floor, New York, New York 10017. David Ganek is the sole member of CityLights and resides in Florida.

6. Defendant Gameday is a California corporation with headquarters at 22 Observation Place, Oakland California 94611.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Gameday as it has conducted business in the State of New York. Gameday also contractually agreed to submit to the jurisdiction of this Court pursuant to Section 16 of the Agreement.

8. As Plaintiff is a Delaware limited liability company whose sole member is a resident of Florida, and Defendant is a California corporation, the Court has subject matter

jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds $75,000.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because the Court has personal jurisdiction over Gameday pursuant to Section 16 of the Agreement.

## FACTUAL BACKGROUND

10. In June 2021, the sole member of CityLights, David Ganek ("Ganek"), purchased over $1.2 million in preferred stock issued by Gameday, and in June 2022, Ganek also lent Gameday $450,000 pursuant to a Convertible Promissory Note.

11. CityLights and Gameday also executed an Equipment Placement and Content Agreement dated June 27, 2021. That agreement was later wholly amended, modified and restated by the Agreement that is the subject of this action.

12. The parties acknowledged in the Agreement that CityLights had previously delivered 18 Voyager haptic chairs manufactured by Positron, Inc. (the "Positron Chairs") that serve to augment immersive cinematic and game genre virtual reality content. The cinematic content includes immersive but passively viewed cinematic-style virtual reality content such as *Tutankhannm: Enter the Tomb* and the *Experience: Yosemite* developed by CityLights.

**Exclusivity**

13. The parties agreed in the Agreement that Positron Chairs were to be located in a Gameday venue in Fisherman's Wharf in San Francisco and, pursuant to Section 2.4 of the Agreement, cinematic content developed by CityLights would be the exclusive offering at that location for at least three years (Section 5.3).

**Revenue Sharing and Exchange of Information**

14. Gameday started selling tickets at the Fisherman's Wharf location for CityLights'

3

content on July 2, 2022.

15. Pursuant to Section 8.1 of the Agreement, CityLights is entitled to 50% of the adjusted gross revenue generated from the Positron Chairs, payable by Gameday within five days after the conclusion of each calendar month.

16. Gameday was and is obligated pursuant to Section 8.3 of the Agreement to provide CityLights with monthly written reports of all information collected by Gameday on the performance of the Positron Chairs. Gameday has failed to pay CityLights the agreed-upon revenue sharing and, with some exceptions, has failed to provide CityLights with the required monthly written performance reports.

17. In addition, pursuant to Section 7.4 of the Agreement, Gameday was and is required to provide CityLights all information about the Fisherman's Wharf venue, the amount of space available at Gameday's other venues, utilization rates, revenue run rates and the like. Again, with few exceptions, Gameday has failed to provide such information to CityLights.

**Rights of First Refusal**

18. CityLights was granted two valuable rights of first refusal under the Agreement, one giving CityLights the right to purchase new kinds of augmented reality chairs and another giving CityLights the right to finance and share in revenue from new passive game content developed by Gameday. With respect to both rights of first refusal, Gameday is required to inform CityLights of Gameday's intention to purchase new chairs and develop new passive game content.

19. Specifically, Sections 3.1 and 3.2 of the Agreement provides that CityLights has the right of first refusal to purchase new chairs that are modified for use with CityLights' cinematic content or any other haptic chairs that Gameday determines are suitable for use in

4

offering CityLights' cinematic content or Gameday's passive game content. If CityLights exercises its right of first refusal to purchase new chairs, CityLights would be entitled to recoup 70% of the adjusted gross revenue generated from the new chairs until the purchase price of the new chairs is recovered by CityLights, after which the parties would equally share the adjusted gross revenue from the new chairs.

20. The second valuable right of first refusal granted to CityLights in Sections 4.1 and 4.2 of the Agreement is CityLights' right to fund 50% of Gameday's development of passive game content. If CityLights exercises that right, the parties jointly own the new passive game content and CityLights is entitled to 25% of the revenue from such content until CityLights' funded amount is repaid, after which CityLights would be entitled to a stipulated royalty.

**Gameday's Breach of CityLights' Rights of First Refusal**

21. In January 2023, Gameday informed CityLights of its intention to order 100 new chairs for $10,000 each. The purchase of those new chairs clearly implicated CityLights' right of first refusal pursuant to Section 3.1 of the Agreement and CityLights requested more information concerning those chairs.

22. Gameday took the completely untenable position that those new chairs were not the type of chairs that implicated CityLights' right of first refusal. Gameday thereafter refused to respond to CityLights inquiries concerning the new chairs.

23. Gameday similarly breached the Agreement by not disclosing the details of new content Gameday stated it was developing. Based on that statement, it was evident that the new content was either content that infringed on CityLights' exclusivity right for cinematic content or was new passive game content for which CityLights had a right of first refusal pursuant to Section 4.1 of the Agreement. Gameday has refused to provide any further information

concerning such new content in breach of the Agreement.

**Gameday Refuses to Collaborate**

24. Sections 7.1 through 7.5 of the Agreement requires Gameday to actively collaborate with CityLights with respect to ***all*** decisions concerning the Positron chairs, any new chairs, pricing, and sales and marketing strategy "with a view to helping CityLights maximize revenues." In breach of the Agreement, Gameday has refused to provide to CityLights the required information and/or engage in any material discussion concerning numerous aspects of the business affecting CityLights. Gameday's refusal to collaborate with CityLights in any material way is a breach of the express provisions of the Agreement.

25. In addition, Gameday has unilaterally removed CityLights' chairs from its venues into storage in violation of Section 7.2 of the Agreement which provides: "All decisions regarding the placement of the Chair and New Chairs, mix of content to be offered on Chairs and New Chairs, sales and marketing strategy, and pricing of the Cinematic Content at the New Venue and other venues will be mutually made." CityLights was not even consulted prior to Gameday's unilateral decision to take CityLights' Positron Chairs out of Gameday's venues.

## COUNT I
**(Breach of Contract — Failure to Pay Revenue)**

26. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 25 as if fully set forth herein.

27. Pursuant to Section 8.1 of the Agreement, CityLights is entitled to 50% of the adjusted gross revenue generated from the Positron Chairs, payable by Gameday within five days after the conclusion of each calendar month.

28. CityLights has issued numerous invoices to Gameday for revenue to which CityLights is entitled and Gameday has refused to pay any of those invoices in breach of the Agreement.

29. Upon information and belief, Gameday has generated revenue from the Positron Chairs which has not been reported to CityLights in further breach of Gameday's revenue sharing obligations under the Agreement.

30. CityLights has been damaged in an amount of the revenues due CityLights to be determined at the trial of this action.

## COUNT II
**(Breach of Contract — Right of First Refusal for New Chairs)**

31. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 30 as if fully set forth herein.

32. As more fully alleged herein, Gameday's purchase of new chairs implicated CityLights' right of first refusal pursuant to Section 3.1 of the Agreement to purchase those new chairs and share in the revenue generated by the new chairs.

33. Gameday's wrongful refusal to provide information concerning the new chairs is a breach of Section 3.1 of the Agreement.

34. CityLights is damaged by Gamedays breach of Section 3.1 of the Agreement in an amount equal to the revenue to which CityLights is entitled pursuant to Section 3.2 of the Agreement.

## COUNT III
**(Breach of Contract — Right of First Refusal for New Content)**

35. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 34 as if fully set forth herein.

7

36. Sections 4.1 and 4.2 of the Agreement granted to CityLights a right of first refusal to fund 50% of Gameday's development of passive game content and imposed an obligation on the part of Gameday to provide CityLights information concerning Gameday's development of that passive game content.

37. Gameday has breached the Agreement by refusing to provide the required information to CityLights to enable CityLights to exercise its right of first refusal.

38. CityLights has been damaged in an amount equal to the stipulated royalties to which CityLights is due under the Agreement.

### COUNT IV
**(Breach of Contract — Breach of the Duty to Collaborate)**

39. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 38 as if fully set forth herein.

40. Gameday is required to actively collaborate with CityLights pursuant to Sections 7.1 through 7.5 of the Agreement to maximize the revenue to which CityLights is due.

41. Gameday has refused to collaborate with CityLights in any material respect, including, among other things, by refusing to provide CityLights the information to which CityLights is entitled pursuant to Section 7.4 of the Agreement.

42. Gameday unilateral removal of CityLights' Positron Chairs from Gameday's venues altogether was a blatant breach of Section 7.2 of the Agreement.

43. Gameday's refusal to provide CityLights information, refusal to materially collaborate with CityLights, and Gamedays removal of CityLights Positron Chairs altogether damaged CityLights in an amount to be determined at the trial of this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, CityLights respectfully requests that the Court enter judgment against Gameday as follows:

A. On CityLights' Counts I through IV awarding against Gameday the damages that CityLights has suffered as a result of Gameday's breach of the Agreement, the amount of such damages to be determined at trial.

B. Awarding CityLights such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: White Plains, New York
September 22, 2023

**KRAVIT SMITH LLP**

By: /s/ Philip M. Smith
      Philip M. Smith

75 South Broadway, Suite 400
White Plains, New York 10601
Tel.: (646) 493-8004
Fax: (917) 858-7101
psmith@kravitsmithllp.com

*Attorneys for Plaintiff*

9